KIRA M. RUBEL [CALIF. STATE BAR NO. 253970]
ALANNA J. PEARL [CALIF. STATE BAR NO. 256853]
**LAW OFFICES OF KIRA M. RUBEL**
krubel@kmrlawfirm.com
19689 7th Ave. NE, Ste. 160
Poulsbo, WA 98370
Telephone: (800) 836-6531

*Attorney for Representative Plaintiff*
ERIC DAVIS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DAVIS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AT&T SERVICES, INC., a Delaware Corporation.<br><br>Defendant. | CASE NO. 15-cv-2342-DMS-DHB<br><br>CLASS ACTION COMPLAINT<br><br>*Third Amended Complaint*<br>for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C § 227<br><br>**Jury Trial Demanded** |

## Introduction

1.  Eric Davis ("Plaintiff") brings this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant AT&T, SERVICES, INC., ("Defendant") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities (collectively "Defendant" or "AT&T"), in negligently, and/or willfully, contacting Plaintiff on Plaintiff's cellular telephone without his prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA").

1

Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## Jurisdiction and Venue

2. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff's complaint alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

3. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendant's contacts with this district are sufficient to subject them to personal jurisdiction. In fact, AT&T has multiple contacts with this forum, and provides its services within this judicial district. Moreover, and on information and belief, Defendant has made the same calls complained of by Plaintiff within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district.

## Parties

4. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Texas who resides in San Antonio, Texas.

5. Plaintiff is informed and believes, and thereon alleges, that Defendant is a communications company, and resides, and at all times mentioned herein did reside, in multiple jurisdictions. The California Secretary of State lists Defendant as a Delaware corporation with its agent for service of process located in Los Angeles,

California, doing business in California since 2000. Defendant's general counsel is located in Washington D.C., at 1120 20th St., NW, 8th Floor.

6. Defendant's direct parent company, AT&T Teleholdings, Inc. is a Delaware corporation, with its principal place of business in Chicago, Illinois. AT&T Teleholdings' parent company, AT&T, Inc., is a Delaware corporation as well, with its principal place of business in Dallas, Texas.

7. The Terms of Service for AT&T's website lists Atlanta, Georgia as its office of dispute management. Based upon information and belief AT&T also makes its calls from various call centers throughout the country, including locations in places like Rantoul, Illinois.

8. Regardless of Defendant's various points of contact, Plaintiff alleges that at all times relevant to this Complaint, Defendant conducted business in the State of California and in the County of San Diego, within this judicial district. Defendant provides television, internet, and communications services to the citizens of San Diego, California, including making telephone calls to these individuals in violation of the TCPA.

## The Telephone Consumer Protection Act of 1991
## 47 U.S.C. § 227

9. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"),1 in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. Initially, the TCPA regulated calls made by the use of automated telephone equipment ("Autodialers" or "ATDS") and prerecorded message calls only. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers or prerecorded messages to a wireless number or prerecorded messages to

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq*.

landline phones in the absence of an emergency or the prior express consent of the called party.2

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, such calls can be costly and inconvenient, and can be made on a widespread basis on account of this modern technology..3

12.     In 2003, due to continued consumer complaints, Congress amended the TCPA to add subsection (c), which created the National "Do-Not-Call" Registry. ["DNCR"] The DNCR is a registry of phone numbers whose owners have elected to opt out of all telemarketing calls from any source.

13.     Section (c) provides that any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may bring a private action based on a violation of the TCPA, as promulgated in the Code of Federal Regulations.4

14.     The Code of Federal Regulations further provides that "No person or entity shall initiate any telephone solicitation" to " . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."5

15.     The Code of Federal Regulations also provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[4] 47 U.S.C. §227(c)(5)
[5] 47 C.F.R. § 64.1200(c),

request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards"6:

>  (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
>  (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
>  (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such Request.
>
>  (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity

---

[6] 47 C.F.R. § 64.1200(d)

on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5)   Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6)   Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

16.   On January 4, 2008, the FCC released another Declaratory Ruling clarifying the TCPA with respect to debt collection activities. In that ruling, it confirmed that autodialed and/or prerecorded message calls to a wireless number by a creditor are permitted only if the calls are made with the "prior express consent" of the called party.7 The FCC "emphasize[d] that prior express consent is deemed to be granted

---

[7] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

1  only if the wireless number was provided by the consumer to the creditor, and that
2  such number was provided during the transaction that resulted in the debt owed."8
3  17. In October 2013, the FCC clarified its TCPA rules again, requiring
4  telemarketers to (1) obtain prior express written consent from consumers before
5  making a call to a person that would otherwise be in violation of the TCPA, and (2)
6  provide an automated, interactive "opt-out" mechanism during each call so consumers
7  may immediately tell the telemarketer to stop calling.9 The consumer's consent must
8  specifically state that it authorizes the telemarketer to make such calls, or the consent
9  is considered invalid.
10 18. Thus, the pivotal question under the TCPA is whether the call recipient gave his
11 prior express consent to receive calls to his phone that would otherwise be in violation
12 of the TCPA. It is Defendant's burden to show that the call recipient gave his express
13 consent to receive debt collection calls and prior express written consent to receive
14 telemarketing calls.10

### Factual Allegations

16 19. At all times relevant, Plaintiff was a citizen of the State of Texas. Plaintiff is,
17 and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).
18 20. Defendant is, and at all times mentioned herein was, an entity that meets the
19 definition of "person," as defined by 47 U.S.C. § 153 (39).
20 21. At all times relevant Defendant conducted business in the State of California
21 and in the County of San Diego, within this judicial district.
22 22. Beginning no later than June of 2013 and continuing through approximately
23 December of 2015, Defendant began calling Plaintiff on his cellular telephone

---

[8] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
[9] *In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6574 (2013)("*Dish Network Ruling*.")
[10] *Grant v. Capital Management Services, L.P.*, 449 Fed.Appx. 598, 600 fn. 1 (9th Cir. 2011).

7
**THIRD AMENDED CLASS ACTION COMPLAINT**
**CASE NO.: 15-CV-2342-DMS-DHB**

number, ending in "3838". The pre-recorded message said something similar to: "This is AT&T. We are calling because there is a problem with your U-Verse account". Plaintiff believes that these calls were for the purpose of either collecting a debt on the account or telemarketing to the account. However, in either case, Plaintiff was not the account holder of the account.

23. On information and belief, Plaintiff believes that at least some of AT&T's calls may have been to solicit Plaintiff's business. Plaintiff believes that AT&T may employ these marketing calls as a ploy to sell upgraded services to subscribers and to solicit new subscribers to sign up for its U-verse service.

24. In fact, Plaintiff has obtained evidence of at least two (2) such telemarketing-type calls, identified by Defendant as "Direct Marketing" calls, both placed within twelve (12) months of one another; on April 17, 2014 and March 24, 2015.

25. Plaintiff did not then, and has never, signed up for AT&T U-Verse service (or any other AT&T service, for that matter). Regardless, Plaintiff received approximately 40 pre-recorded message calls from Defendant.

26. Plaintiff has owned his cellular telephone number since approximately 1997. The original contract was with Sprint and later transferred to Verizon. This cellular telephone number has never been serviced by AT&T.

27. Moreover, Plaintiff has never been an AT&T customer of any sort.

28. In total, Plaintiff received approximately 40 calls from AT&T regarding a "U-Verse" service during the June 2013 to December 2015 timeframe. Each and every one of these calls was made to Plaintiff's cellular telephone, without his consent, with a pre-recorded message, and an autodialer.

29. Plaintiff has never provided Defendant with his cellular phone number. Plaintiff did not give Defendant prior express consent to call him for any reason on his cellular telephone with the use of an autodialer and/or prerecorded message, pursuant to 47 U.S.C. § 227(b)(1)(A).

30. Notwithstanding the fact Plaintiff did not provide Defendant his cellular

telephone number at any time, Defendant, or its agents, have called Plaintiff on his cellular telephone via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and by using "an artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

31. On information and belief, Plaintiff believes that Defendant utilized an ATDS which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

32. Some or all of the calls to Plaintiff's cell phone were also pre-recorded messages and therefore a patent violation of the statute.

33. The telephone number Defendant and/or its agents called is assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

34. These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

35. These telephone calls by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

36. Plaintiff has had his cell phone number registered on the DNCR since 2006. Plaintiff received multiple calls to his cell phone from Defendant which constituted telemarketing violations.

37. Defendant did not have Plaintiff's prior express written consent to make such calls to his cell phone.

38. These telephone calls by Defendant and/or its agents violated 47 U.S.C. § 227(c).

39. Under the TCPA and pursuant to the FCC's accompanying Declaratory Rulings, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

//

**THIRD AMENDED CLASS ACTION COMPLAINT**
**CASE NO.: 15-CV-2342-DMS-DHB**

## Class Action Allegations

40. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated ("the Class").

41. Plaintiff represents, and is a member of, the Class, consisting of:

All persons within the United States who received any telephone call from Defendant or its agents to his or her cellular telephone through the use of any ATDS and/or with an artificial or pre-recorded voice, without their prior express consent, within the four years prior to the filing of the Complaint in this action whose phone number was obtained by skip tracing or through other third parties.

42. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

43. Plaintiff does not know the number of members in the Class, but believes the Class members number in the tens of thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of this matter.

44. Plaintiff and members of the Class were harmed by the acts of Defendant in, but not limited to, the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using an ATDS and/or with a prerecorded voice message, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; by having to retrieve or administer messages left by Defendant during those illegal calls; and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

45. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury. Plaintiff reserves the right to expand the Class definition to seek

recovery on behalf of additional persons as facts are learned in further investigation and discovery.

46. The joinder of the Class members is impracticable and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The disposition of the claims in a Class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agent's records.

47. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These questions of law and fact predominate over questions that may affect individual Class members, including the following:

(1) Whether, within the four years prior to the filing of this Complaint, Defendant and/or their agents made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

(2) Whether Defendant's conduct was knowing and/or willful;

(3) Whether Defendant is liable for damages, and the extent of statutory damages for such violation;

(4) Whether Defendant should be enjoined from engaging in such conduct in the future;

(5) Whether Defendant obtained each Class member's name by skip tracing or called individuals who were not AT&T's clients; AND

    (6) Whether Defendant obtains phone numbers from third parties.

48. As a person that received numerous calls using an automatic telephone dialing system or an artificial or prerecorded voice, without his prior express consent, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

49. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law would be allowed to proceed without remedy and Defendant would undoubtedly continue such illegal conduct.  Because of the probable amount of the individual Class members' claims, few Class members could afford to seek legal redress for the wrongs complained of herein.

50. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

51. A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for a violation of the statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

52. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

//

## First Cause Of Action

### Negligent Violations Of The Telephone Consumer Protection Act

### 47 U.S.C. § 227

53. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully stated herein.

54. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b) and (c).

55. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each and every violation of sections (b) and (c) 47 U.S.C. § 227, or $1,000 per call. Plaintiff and the Class are also entitled to and do seek injunctive relief prohibiting such conduct in the future.

56. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## Second Cause Of Action

### Knowing and/or Willful Violations Of The Telephone Consumer Protection Act

### 47 U.S.C. § 227

57. Plaintiff incorporates by reference paragraphs 1-51 of this Complaint as though fully stated herein.

58. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227.

59. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation of sections (b) and (c) of 47 U.S.C. § 227, or $3,000 per call.

60. Plaintiff and the Class are also entitled to and do seek injunctive relief prohibiting such conduct in the future.

61. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## **Prayer For Relief**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

### **First Cause of Action for Negligent Violation of the TCPA**
### **47 U.S.C. § 227 Et Seq.**

- As a result of Defendant's negligent violations of 47 U.S.C. §§ 227(b)(1) and (c)(5), Plaintiff seeks for himself and each Class member damages for violations of each subsection, up to $1,000.00 (one-thousand dollars).
- Injunctive relief prohibiting such conduct in the future.
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class.
- An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.
- Any other relief the Court may deem just and proper.

### **Second Cause of Action for Knowing and/or Willful Violation of the TCPA**
### **47 U.S.C. § 227 Et Seq.**

- As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §§ 227(b)(1) and (c)(5), Plaintiff seeks for himself and each Class member treble damages for violations of each subsection, up to $3,000.00 (three-thousand dollars).
- Injunctive relief prohibiting such conduct in the future.

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class.
- An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.
- Any other relief the Court may deem just and proper.

### Trial By Jury

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all counts so triable.

Date: June 7, 2016        LAW OFFICES OF KIRA M. RUBEL

By: */s/ Kira M. Rubel*
Kira M. Rubel (CA. Bar No. 253970)
19689 7th Ave NE, Suite 160
Poulso, WA 98370
krubel@kmrlawfirm.com
Phone: (800) 836-6531
Fax: (206) 238-1694

Date: June 7, 2016        SCOTT D. OWENS, P.A.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.
Scott D. Owens, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
scott@scottdowens.com
Phone: (954) 589-0588

*Attorneys for Plaintiff and the Putative Class*