Kira M. Rubel (State Bar No. 253970)
**LAW OFFICES OF KIRA M. RUBEL**
19689 7TH AVE. NE, Suite 160
Poulsbo, WA 98370
krubel@kmrlawfirm.com
Phone: (800) 836-6531
Fax: (206) 238-1694

Alanna J. Pearl (State Bar No. 256853)
**PEARL LEGAL COUNSEL**
555 W. Beech St., Ste 230
San Diego, CA 92101
ajp@pearlcounsel.com
Phone: (619) 413-7137

Scott D. Owens (FL. Bar No. 0597651) *Admitted Pro Hac Vice*
Patrick Crotty (FL. Bar No. 0108541) *Admitted Pro Hac Vice*
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
scott@scottdowens.com
Phone: (954) 589-0588

*Attorney for Plaintiff Eric Davis And the Putative Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC DAVIS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AT&T SERVICES, INC.,<br><br>Defendant. | CASE NO. 15-cv-02342-DMS-DHB<br><br>**DECLARATION OF KIRA M. RUBEL IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER TO PERMIT THE FILING OF HIS FOURTH AMENDED COMPLAINT**<br><br>**Hearing Date:** October 14, 2016<br>**Hearing Time:** 1:30 p.m.<br>**Hearing Location:** Courtroom 13A<br>333 West Broadway<br>San Diego, CA 92101<br>**Judge:** Hon. Dana M. Sabraw |

I, Kira Rubel, declare:

1. My name is Kira Rubel and I am counsel for Plaintiff Eric Davis and the putative class in the above captioned action. I make the following statements based upon my own personal knowledge and, if called to testify regarding the facts contained herein, can and would do so competently.

2. During the Rule 26f conference, I mentioned to the Court and counsel that I was concerned that an early amended pleading deadline could prejudice Plaintiff's case since there were numerous factual issues to sort through. As I recall, The Honorable Magistrate Judge Bartick responded that the Court would be rational in considering any motion by Plaintiff for leave to amend if the facts required it, or words of similar effect.

3. My co-counsel and I have been diligent in our continuous efforts to engage in discovery with Defendant. In fact, I sent out Plaintiff's Requests for Production, Set One, on December 31, 2015. I received Defendant's initial responses on March 18, 2016, due to various extensions. A true and correct copy of Defendant's responses to Set One is attached hereto at Exhibit D.

4. The bulk of the documents responsive to Set One were regarding calls to Plaintiff and the customer's account in which his number was transposed. In spite of receiving these records on March 18, we were not sure exactly how to read these documents, since they were incredibly hard to interpret with their various acronyms. Even though we could see in Plaintiff's records that he had indicated that Defendant was calling the "wrong number," we had no idea in what context this was said, what types of calls these were, etc.

5. We walked through the call records to Plaintiff with defense counsel, Hans Germann, by telephone and even he indicated that it would be best if one of Defendant's employees could go over the documents with us and interpret the short hand and different types of calls made to Plaintiff.

6. Taking Mr. Germann's cue, I sent Mr. Germann an email on March 28, 2016 about the topics upon which I wished to depose one or more of Defendant's

agents. Included in this topic list was a request to understand more about calls to "wrong numbers".

7. Ultimately, the earliest Defendant could make anyone available was May and we settled on May 25 as the date to depose two individuals. Unfortunately, defense counsel was unable to make deponents available for all of my requested topics in the Rule 30(b)(6) notice, which is why we conducted subsequent depositions on June 28/29 on the remaining topics.

8. On April 1, 2016, I sent Plaintiff's Special Interrogatories and Requests for Admission, Sets one, and Requests for Production, Set Two. This second set of document requests inquired, generally, into Defendant's terms and conditions, scripts for outgoing calls, and recordings of calls with Plaintiff. A true and correct copy of Defendant's responses to Set Two is attached hereto at Exhibit E.

9. I received the documents responsive to our Request for Production Set Two on May 18, 2016. This batch of documents contained the first reference to calls to "wrong numbers" in Defendant's records that Plaintiff had seen – although it was in reference to the debt collection department exclusively.

10. The Rule 30(b)(6) depositions which took place on May 25, 2016 were of Joni Hixson and Michael Pederson. Mr. Pederson testified exclusively regarding the type of dialer used by Defendant and is not relevant to this motion. Ms. Hixson is the lead compliance person for ATT's collection's department and she testified regarding what happens when the debt collection department reaches a wrong number. In that instance, the collection agent is required to send a form email to a specific internal email address with the incorrect phone number included in the body of the email. This phone number is then circulated to all departments to be excluded from all other outgoing call lists, a process which takes approximately 30 days. This was the first time we realized that perhaps Defendant had a policy with respect to "wrong number" calls.

11. Following Ms. Hixson's deposition, I asked opposing counsel whether Plaintiff's phone number was ever included in one of these "wrong number emails" from the collection's department – defense counsel stated that it was not. Although we contend that these wrong numbers should be included in the class ultimately, since Plaintiff was not included in the emails, there was no basis to update the class definition at that time.

12. Based on Ms. Hixson's testimony, I composed Requests for Production Set Three, and asked for all outgoing call logs which indicated that Defendant had reached a wrong number. These requests were sent on June 3, 2016. A true and correct copy of Defendant's responses to Set Three is attached hereto at Exhibit F.  These requests, numbers 29-32, ultimately were the source of the Parties' recent Joint Motion for Determination of Discovery Dispute.

13. During this early June time frame, we were in the process of arranging a time for further Rule 30(b)(6) depositions on the topics I had noticed in the first Rule 30(b)(6) notice. The earliest dates that Defendant could arrange with the appropriate people were on June 28 and 29, 2016 at AT&T's Atlanta, Georgia facility.

14. At the June depositions and, specifically, during the deposition of Grace Carter, we learned about Defendant's Proactive Churn Management Program ["PCM"], which is the department that calls customers in an effort to preemptively resolve account issues prior to service cancellation.

15. Ms. Carter testified that defendant kept records of PCM calls to "wrong numbers" in both their internal account notes and their vendors' databases of outgoing calls placed on Defendant's behalf, not just in the "wrong number emails" that Ms. Hixson had testified about. Ms. Carter also testified that it was the practice of this department to continue to call individuals who stated Defendant had reached a wrong number.

16. The account notes associated with calls to Plaintiff's cell phone show calls made by "proactive churn management". Although we didn't know specifically what this meant before the deposition of Ms. Carter, the combination of testimony by Ms. Carter and the Plaintiff's account notes show that Mr. Davis was one of the individuals who informed Defendant that they had reached the wrong number and who continued to receive subsequent calls regardless.

17. Thus, we believe that the PCM Department can identify calls to wrong numbers, such as those to Plaintiff, but we did not know this until the deposition of Ms. Carter revealed Defendant's unwritten policy to continue calling wrong numbers. This information could not have been obtained prior to Ms. Carter's deposition since she was only made available to Plaintiff in June and is the only deponent who possessed knowledge of Defendant's practices regarding wrong number calls within the PCM Department.

18. This will be our Fourth Amended Complaint. The first amendment was at Defendant's request to update the name of Defendant in the pleading. The motion for leave to file the second amendment was filed on April 15, 2016, the last day Plaintiff was permitted to file his motion for leave to amend per the Court's scheduling order, in order to add telemarketing allegations against Defendant. Finally, the Third Amended Complaint was filed on June 9, 2016, at Defendant's request and stipulation, to add that Plaintiff had received two calls in a 12-month period, in order to avoid a motion to dismiss.

19. We did not have sufficient information on April 15, 2016 to amend the complaint to add this updated class definition or the supporting facts. Until the June deposition of Ms. Carter, we had little to no understanding of the PCM Program and certainly had no knowledge regarding that department's treatment of "wrong number" calls.

20. On September 1, 2016, I sent defense counsel, Mr. Germann, the proposed amended complaint for his review and stated our intent to move for leave to amend. On September 2, 2016, he indicated his client's intent to oppose our request. Mr. Germann and I also met and conferred telephonically on September 8, 2016 to fully discuss Plaintiff's motion and he reiterated his intent to oppose this motion.

I declare the foregoing is true under penalty of perjury and the laws of the United States of America on this 16th day of September, 2016.

**LAW OFFICES OF KIRA M. RUBEL**

*/s/ Kira M. Rubel*_____
KIRA M. RUBEL
COUNSEL FOR LEAD PLAINTIFF, ERIC DAVIS.