UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DAVIS, on behalf of himself and all others similarly situated,,<br><br>  Plaintiff,<br><br>v.<br><br>AT&T CORP., a corporation,,<br><br>  Defendant. | Case No.: 15cv2342-DMS (DHB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

This matter comes before the Court on Plaintiff's motion for class certification. Defendant AT&T Services, Inc. filed an opposition to the motion, and Plaintiff filed a reply. The motion came on for hearing on February 24, 2017. Kira Rubel, Scott Owens and Alanna Pearl appeared on behalf of Plaintiff, and Hans Germann and John Nadolenco appeared on behalf of Defendant. Having carefully considered the pleadings and arguments of counsel, the Court denies the motion.

## I.

## BACKGROUND

This case arises under the Telephone Consumer Protection Act ("TCPA"). Plaintiff Eric Davis alleges that beginning in June 2013 and continuing through approximately December 2015, Defendant called his cellular telephone inquiring about an AT&T U-Verse

1

15cv2342-DMS (DHB)

account. Plaintiff has never had an account with AT&T, and during at least two of those phone calls he told Defendant's agent they had the wrong number. Nevertheless, the calls continued.

On October 16, 2015, Plaintiff filed the present case alleging one claim for negligent violation of the TCPA and another claim alleging willful violation of the TCPA. In the original Complaint, and the three Amended Complaints that followed, Plaintiff purported to represent the following class of individuals:

> All persons within the United States who received any telephone call from Defendant or its agents to his or her cellular telephone through the use of any ATDS and/or with an artificial or pre-recorded voice, without their prior express consent, within the four years prior to the filing of the Complaint in this action whose phone number was obtained by skip tracing or through other third parties.

On September 16, 2016, Plaintiff filed a motion for leave to amend the scheduling order so he could file a Fourth Amended Complaint that set forth a different proposed class. That class was defined as:

> All persons within the United States who had or have a number assigned to a cellular telephone service and received at least two telephone calls from Defendant or its agents through the use of any ATDS and/or with an artificial or pre-recorded voice, without their prior express consent, within the four years prior to the filing of the Complaint in this action who were not customers of Defendant at the time of the calls, where Defendant's records indicate that prior to the second and/or any subsequent call, the call recipient indicated that Defendant had reached a "wrong number" or similar notation in Defendant's customer account records.

The Court denied that motion, finding Plaintiff had failed to show the good cause required by Federal Rule of the Civil Procedure 16(b). In particular, Plaintiff failed to explain the delay in filing his motion given his knowledge of the facts and his filing of several amended complaints.

/ / /

/ / /

Plaintiff now moves for class certification, but not for the class proposed in his Third Amended Complaint. Rather, Plaintiff moves to certify the class proposed in his Fourth Amended Complaint, which was not accepted for filing.

## II.

## DISCUSSION

Plaintiff asserts the class set out in his proposed Fourth Amended Complaint meets the requirements of Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3). Defendant disputes that any of the requirements for class certification are met. It also argues the class Plaintiff seeks to represent is different from the one set out in the operative Complaint, and thus not subject to certification.

**A.    The Proposed Class**

District courts in the Ninth Circuit have taken different approaches to whether a court may certify a class other than the one described in the complaint. In *Berlowitz v. Nob Hill Masonic Mgmt., Inc.,* No. C-96-01241 MHP, 1996 U.S. Dist. LEXIS 22599 (N.D. Cal. Dec. 6, 1996), the court declined to do so, stating it was "bound by the class definition provided in the Complaint[,]" and that it would "not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it." *Id.* at *6. *See also Costelo v. Chertoff,* 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) (citing *Berlowitz*) (same). Other courts have taken a more nuanced approach and agreed to consider certification of a class other than that described in the complaint if "the proposed modifications [to the class definition] are minor, require no additional discovery, and cause no prejudice to defendants." *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010). *See also Van Patten v. Vertical Fitness,* No. 12cv1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845, at * 7-11 (S.D. Cal. Nov. 8, 2013) (agreeing to consider modified class definition because there was no prejudice to defendant). While not described as "minor," courts have considered certification of an amended class if it is narrower than the class alleged in the complaint. *Abdeljalil v. General Electric Capital Corp.,* 306 F.R.D. 303, 306 (S.D. Cal. 2015); *Knutson v. Schwan's Home Services, Inc.*,

1  No. 3:12-cv-0964-GPC-DHB, 2013 U.S. Dist. LEXIS 127032, at *10-13 (S.D. Cal. Sep.
2  5, 2013). *See also Wolf v. Hewlett Packard Co.*, No. CV 15-01221 BRO (GJSx), 2016
3  U.S. Dist. LEXIS 18122, at *21-22 (C.D. Cal. Sep. 1, 2016) (considering revised class
4  definition because it was "narrower than the definition in the operative complaint," and
5  there was "no lack of diligence on the part of Plaintiff[.]")

Here, Plaintiff argues the class he seeks to certify falls within the "narrowing" exception and is therefore appropriate for consideration. Defendant disagrees, and asserts the class at issue here is an entirely different class, not a narrower version of the one alleged in the Complaint.

In each of his Complaints, Plaintiff defined the class as follows:

> All persons within the United States who received any telephone call from Defendant or its agents to his or her cellular telephone through the use of any ATDS and/or with an artificial or pre-recorded voice, without their prior express consent, within the four years prior to the filing of the Complaint in this action *whose phone number was obtained by skip tracing or through other third parties*.

(emphasis added). The class he now seeks to certify is entirely re-worked, and defined as:

> All persons within the United States who had or have a number assigned to a cellular telephone service and received at least two telephone calls from Defendant or its agents through the use of any ATDS and/or with an artificial or pre-recorded voice, without their prior express consent, within the four years prior to the filing of the Complaint in this action *who were not customers of Defendant at the time of the calls, where Defendant's records indicate that prior to the second and/or any subsequent call, the call recipient indicated that Defendant had reached a "wrong number" or similar notation in Defendant's customer account records*.

(emphasis added).

The amended proposed class definition is similar to that proposed in *Abdeljalil*, wherein the court agreed to consider a proposed class different from that alleged in the complaint. The proposed class in *Abdeljalil* was defined as follows:

/ / /

> All persons within the United States who had or have a number assigned to a cellular service, who received at least two calls using an automatic telephone dialing system and/or an artificial or pre-recorded voice from Defendant or its agents between August 22, 2008 and August 22, 2012 for debt collection purposes, who were not customers of Defendant at the time of the calls, where Defendant's customer account records indicate that prior to the second and any subsequent calls that said person were non-account holders as identified by one or more of the following terms in Defendant's electronic customer account records: "wrong number," "wrong telephone number," "third party contact," "wrong party," "wrong party number," or "wrong party telephone number."

306 F.R.D. at 306.  Plaintiff relies heavily on *Abdeljalil* in arguing for the same result here: consideration of the newly proposed class.  However, this case is distinguishable from *Abdeljalil*.  There, the plaintiff initially proposed the following expansive class:

> All persons within the United States who received any telephone call/s from Defendant or their agents and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or pre-recorded voice within the four years prior to the filing of the Complaint.

*Abdeljalil*, Case No. 12cv2078, Docket No. 34 at 6.  Based on this broad definition, the court found the amended proposed class was "simply a narrower version of the class definition presented in the TAC, which is allowable." *Abdeljalil*, 306 F.R.D. at 306.

Here, by contrast, the class proposed in the Complaints is not as broad.  Rather, it is specifically limited by the condition that the class member's phone number "was obtained by skip tracing or through other third parties."  That this condition has been removed from the amended proposed class definition does not automatically make it a narrower class.  Instead, that condition has been replaced with a number of other conditions, namely, whether the consumer was a customer of Defendant, whether that consumer indicated to Defendant that it called a "wrong number," and whether the consumer received another

/ / /

/ / /

/ / /

call after so indicating.  This proposed class is not simply a narrower version of that proposed in the Complaints.  It is an entirely different class. [1]

Plaintiff's reliance on *Knutson* is similarly misplaced.  In that case, as in *Abdeljalil*, the plaintiff initially proposed a class of:

> All persons within the United States who received any telephone call from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, which call was not made for emergency purposes or with the recipient's prior express consent, within the four years prior to the filing of this Complaint.

2013 U.S. Dist. LEXIS 127032, at *7.  The amended proposed class added a new condition, namely that the class members be "past or present members of Nutrisystem, Inc." *Id.* Like the *Abdeljalil* court, the *Knutson* court found the amended proposed class was "more limited" than that proposed in the complaint.  *Id.*  As explained above, the facts of this case do not fit that rationale.

Furthermore, at oral argument defense counsel explained the class proposed in Plaintiff's Complaints would be non-existent as Defendant does not obtain any numbers through skip-tracing.  On this basis, Defendant argued it was impossible for Plaintiff's amended proposed class to be narrower than the class of zero proposed in the Complaints. Although Defendant did not present any evidence to support this argument, Plaintiff did not dispute it, and the logic is infallible.  If the class proposed in the Complaints would have had zero members, then the amended proposed class could not have been narrower than a class of zero.

///

---

[1]   This conclusion is supported by Magistrate Judge Bartick's Order denying Plaintiff's motion to compel discovery.  (*See* Docket No. 39.)  There, Judge Bartick rejected Plaintiff's argument that "wrong number" calls were encompassed within the class definition alleged in the Complaint.

Plaintiff also argues Defendant would not be prejudiced if the Court were to consider the class, as amended. Defendant did not address this issue in its brief, but confirmed at oral argument that it would be prejudiced if the Court were to consider the amended class. During discovery, Defendant objected to discovery requests seeking information on "wrong number" calls on the ground that information was irrelevant. Magistrate Judge Bartick sustained that objection, and thus, the parties did not conduct discovery on any "wrong number" calls. Indeed, Plaintiff admits "[t]he outcome of this motion for class certification will decide whether Plaintiff is entitled to these records or not." (Mem. of P. & A. in Supp. of Mot. at 12 n.10.) Thus, if the Court were to consider Plaintiff's amended class, discovery on the "wrong number" class would have to be reopened, which would impose additional costs and expenses on the parties and further delay this case.[2]

Each of the factors mentioned above, *i.e.*, the nature of the modification to the class definition (a completely different class), whether additional discovery is required (yes) and whether Defendant will be prejudiced (yes), weigh in favor of declining to address the amended class in this case. The Court's decision to deny Plaintiff's motion to amend the scheduling order also weighs in favor of that outcome. There, the Court found Plaintiff failed to show good cause, *i.e.*, he was not diligent, in seeking leave to amend the scheduling order to extend the deadline to file a motion for leave to amend the complaint a fifth time to assert the class proposed in the present motion. Consideration of that class now would render the Court's previous decision a nullity, and would simply provide Plaintiff with an end-run around that decision. This the Court declines to do. However, even if the Court were to consider the amended class, Plaintiff has not shown the requirements for certification are met, as explained below.

**B.    Rule 23(b)(3)**

Assuming without deciding that Rule 23(a)'s four prerequisites for class certification

---

[2]    Plaintiff's original Complaint was filed on October 16, 2015, over 17 months ago.

--numerosity, commonality, typicality, and adequacy of representation--are satisfied, the amended class fails to satisfy the requirements of Rule 23(b)(3). Class certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted). Rule 23(b)(3) calls for two separate inquiries: (1) do issues of fact or law common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In adding the requirements of predominance and superiority to the qualifications for class certification, "the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote … uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee notes).

A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinzer v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001)). Thus, courts must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, *et al., Federal Practice and Procedure* § 1778 (3d ed. 2005). The predominance inquiry under Rule 23(b) is rigorous, *Amchem,* 521 U.S. at 624, as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

Plaintiff asserts the predominance requirement is met here. In support of that assertion, he points to issues he believes are common to the class, such as whether the calls were made to cellular phones, whether Defendant used an ATDS, and whether Defendant can prove it had prior express consent for the calls. Defendant disputes whether some of

these issues are common to the class, but argues primarily that individual issues surrounding consent will predominate over any common issues.

The Ninth Circuit has held that "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Group,* 847 F.3d 1037, 2017 U.S. App. LEXIS 1591, at *13 (9th Cir. Jan. 20, 2017). Defendant here relies on the affirmative defense, and asserts it can meet its burden to show consent by reference to its customer account records. Defendant contends the phone numbers in its records, and the phone numbers that it called, were obtained from its customers, which is prima facie evidence of prior express consent.

Plaintiff makes a related but distinct argument. He asserts *lack of consent* is an issue common to the class, and that lack of consent can be proved through common evidence. In essence, Plaintiff argues that a notation in Defendant's records to the effect of "wrong number" is sufficient to establish on a class-wide basis without individualized inquiry that Defendant made a call to a number it did not have consent to call. However, "wrong number" notations would not absolutely resolve this issue. The parties would still have to go through the "wrong number" notations to determine whether those call recipients were, in fact, customers of Defendant at or before the time of the calls. Defendant has come forward with evidence that a call with a "wrong number" notation proves nothing because many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a "procrastination tool" to avoid speaking on the phone. (Opp'n Br. At 12, Ex. E (Carter Dep. at 47-48)) ("[I]t is a very common experience for the customers to say you have the wrong number, and it's not the wrong number," "it happens every day," and "[e]very outbound organization in the world knows that.")

A search of Defendant's records also will not reveal whether the call recipients who claimed "wrong number" were customers of Defendant who gave their prior express consent to be called. Plaintiff argues his expert could "[c]onduct a reverse number lookup to determine who these numbers belonged to at the time of the calls[,]" (Reply at 11), but he fails to explain how the results of that search will be determinative of consent or lack

thereof. Even if Defendant made a call to a person who was not a customer at the time of the call, that would not eliminate the need for an individualized inquiry to determine whether that person was a past customer and thus, had previously provided consent to be called. In those circumstances, Defendant can continue to make automated and/or prerecorded voice collection calls to former customers who have amounts owing. *See Van Patten v. Vertical Fitness Group, LLC* 22 F. Supp. 2d 1069, 1077-78 (S.D. Cal. 2014) (cancellation of gym membership did not terminate consent).

Likewise, if Defendant's customer provided a number belonging to another person, such as a spouse or other family member, an inquiry into that customer's authority to provide consent to call that number would be required. *See, e.g., Gutierrez v. Barclays Group*, No. 10cv1012-DMS (BGS), 2011 U.S. District. LEXIS 12546, at *8-9 (S.D. Cal. Feb. 9, 2011) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)) (husband can provide consent for subscriber wife, if he "'possessed common authority over or other sufficient relationship to the'" phone).

In sum, a complete analysis of the customer status issue would require an inquiry into each call recipient's individual circumstances. Plaintiff fails to explain how these individualized inquiries could be performed via class-wide proof, and thus fails to show that common issues would predominate over individualized inquiries. *See True Health Chiropractic, Inc. v. McKesson Corp.,* No. 13cv02219-HSG, 2016 U.S. Dist. LEXIS 111657, at *13-14 (N.D. Cal. Aug. 22, 2016) (finding predominance requirement not satisfied where plaintiffs failed to "offer[] their own satisfactory method of establishing a lack of 'express permission' via class-wide proof."); *Shelby v. LVNV Funding, LLC,* No. 13cv1383-BAS(BLM), 2016 U. S. Dist. LEXIS 83940, at *31-36 (S.D. Cal. June 22, 2016) (finding predominance requirement not satisfied where "individualized inquiries will be necessary to determine whether particular class members gave prior express consent.")

**C.    Rule 23(b)(2)**

Finally, Plaintiff devoted two paragraphs in his twenty-five page opening brief as to why the amended proposed class should be certified under Federal Rule of Civil Procedure

10

15cv2342-DMS (DHB)

23(b)(2).  (*See* Mem. of P. & A. in Supp. of Mot. at 18-19.)  Under Rule 23(b)(2), class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive and declaratory relief appropriate to the class as a whole.  Fed. R. Civ. P. 23(b)(2).

Here, Plaintiff mentioned his request for injunctive relief in his Complaint, but he did not specify the injunctive relief requested.  More specificity is provided in the present motion where Plaintiff states he is seeking an injunction "prohibiting Defendant from making autodialed calls to consumers' cellular telephone numbers who have stated that Defendant reached the wrong number[.]"  (Mem. of P. & A. in Supp. of Mot. at 19.)  Those specifics, however, do not warrant certification under Rule 23(b)(2) because an injunction to that effect would not provide relief to the amended proposed class.  As explained above, the amended proposed class is not limited to consumers who received an autodialed call from Defendant on their cellular phone and stated "wrong number."  Rather, to be a member of the proposed amended class, the person called *must not have been a customer of Defendant*, must have received an autodialed call from Defendant on their cellular phone, stated "wrong number" or something to that effect, and then received another autodialed call from Defendant.  Because the injunctive relief proposed in Plaintiff's motion would not provide relief to the amended proposed class, Plaintiff would not be entitled to certification under Rule 23(b)(2).

### III.
### CONCLUSION

For these reasons, Plaintiff's motion for class certification is denied.

**IT IS SO ORDERED.**

Dated:  March 28, 2017

_____
Hon. Dana M. Sabraw
United States District Judge